NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0121n.06

No. 07-3549

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 24, 2010
LEONARD GREEN, Clerk

H. THOMAS MORAN, II, Receiver,

    Plaintiff-Appellee,

       v.

DAVID W. SVETE,

    Defendant-Appellant.

On Appeal from the United
States District Court for the
Southern District of Ohio at
Dayton

_____/

**Before:**     **GUY, ROGERS, and GRIFFIN, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**     Defendant David W. Svete appeals from

the denial of his motion to dismiss the complaint, which sought to compel arbitration of

claims brought by the Receiver, Thomas Moran, II, arising out of Svete's alleged control of

LifeTime Capital, Inc.'s viatical investment business. Svete argues that it was error to refuse

to compel arbitration because the district court's reasons were not supported by the record

and involved error in the application of the law concerning the enforcement of arbitration

clauses. The Receiver contends that the request for arbitration was properly denied, arguing

both (1) that *res judicata* bars litigation of the question of arbitrability; and (2) that arbitration

was properly denied because the challenge was to the existence—as opposed to the

validity—of the contract containing the arbitration clause. Because the district court found the arbitration clause unenforceable on the basis of allegations that the contract as a whole was a product of fraud, we reverse and remand for further consideration of the demand for arbitration in this case.

## I.

Viatical settlements are financial products involving agreements with terminally ill viators who sell, at a discount, the right to receive the benefits of their life insurance policies upon maturity. LifeTime Capital marketed and sold beneficial interests in such policies to investors, assigning them an interest equivalent to their desired investment plus a promised return. These investments would yield higher rates of return than other investment options—as long as the viator died within the life expectancy quoted to the investor.

LifeTime Capital was incorporated by Svete in 1997, and was sold in 1998 to another company whose principal was allegedly under Svete's control. Over the next several years, Svete formed and controlled a number of other entities associated with LifeTime's viatical investment business, which were allegedly used to disguise Svete's control, mislead investors, and facilitate the diversion of invested funds. For example, one company (Medical Underwriters, Inc.) allegedly misrepresented and even forged the purportedly independent medical evaluation of the viator's life expectancy. Another company, touted as an independent investment servicing company, allegedly underfunded the premium reserve account and facilitated the diversion of funds from that account to Svete. Many investments

failed to mature when expected, and additional premium payments were required. Investors also claimed that sales agents made false statements concerning life expectancy, the status of life insurance policies, and the risks associated with the investments. Overall, companies controlled by Svete obtained more than $100 million in investments from more than 3,000 investors. Svete was convicted of federal charges arising out of the allegedly fraudulent investments, and proceeded pro se before the district court in this case.[1]

The Receiver's appointment, as well as this action, grew out of a lawsuit filed by H. Thayne Davis, a LifeTime investor, against both LifeTime and Svete for fraud and breach of contract. (*Davis v. LifeTime Capital, Inc.*, S.D. Ohio No. 3:04-cv-00059). Moran was appointed as Receiver for LifeTime Capital and was expressly authorized "to take any and all action as the Receiver may deem necessary or prudent for the preservation, maintenance, and administration of the LifeTime Portfolio comprised of viatical and life settlement policies and beneficial interests therein[.]"

In reliance on the district court's orders granting and clarifying the reach of his authority, the Receiver commenced this action in February 2005 against Svete, individually, asserting sixteen claims for relief including: fraud, breach of fiduciary duty, civil conspiracy, misrepresentation, breach of contract, fraudulent transfer, unjust enrichment, alter ego,

---

[1]Svete and co-defendant Ronald Girardot were convicted in Florida on federal charges of conspiracy, mail fraud, money laundering, and interstate transportation of money obtained by fraud arising out of LifeTime's viatical investments. *United States v. Svete*, 521 F.3d 1302 (11th Cir. 2008), *vacated in part*, 556 F.3d 1157, 1159 (11th Cir. 2009) (en banc), and *reinstated in part*, 565 F.3d 1363 (11th Cir. 2009), *reh'g. denied*, _F.3d_ (June 18, 2009) (Table, No. 05-13809-HH), *petition for cert. filed* (Nov. 11, 2009) (No. 09-7576).

constructive trust, corrupt activities in violation of state law (Ohio Rev. Code § 2934.34),

federal Racketeering Influenced and Corrupt Organization (RICO) Act claims (18 U.S.C. §

1962(a)-(d)), and violations of the Sarbanes-Oxley Act of 2002 (Pub. L. No. 107-204, 116

Stat. 745).[2] The case proceeded and Svete filed a number of interlocutory appeals that have

largely been dismissed either voluntarily or by order of this court.  Although interlocutory

in nature, the decision denying Svete's motion to dismiss and compel arbitration is

immediately appealable pursuant to 9 U.S.C. § 16.  *Simon v. Pfizer Inc.*, 398 F.3d 765, 772

(6th Cir. 2005).

Svete's pro se motion to dismiss the complaint and enforce arbitration, filed in

September 2006, asserted that the Receiver "is subject to Binding Arbitration with the

Defendant, as per a multitude of contracts that contain the Arbitration Provision" and that the

"multitude of contracts with LifeTime Capital, Inc. clearly specify that any disputes must be

resolved through Binding Arbitration."  Recommending that this motion be denied, the

magistrate judge concluded that:

> Defendant's Motion to Dismiss is unsupported by any Exhibits or
> specific reference to documents of records in this case, and the Motion does
> not allege that the Receiver (or LifeTime Capital) agreed to mandatory
> arbitration of claims against Defendant in his individual or personal capacity.
> Although the Complaint alleges that Defendant formerly held an ownership
> interest in LifeTime Capital, Inc., and that he was formerly an officer of
> LifeTime Capital, Inc., the Receiver's claims in the present case seek to hold
> Defendant personally liable, rather than liable in his corporate capacity as a
> former owner or officer of LifeTime Capital.  The allegation that LifeTime

---

[2]Seven other entities allegedly controlled by Svete were named as defendants but later dismissed
without prejudice for failure to effect service.

Capital entered into contracts containing mandatory arbitration provisions does not establish that Defendant entered into such contracts in his individual or personal capacity.

Svete filed objections to the report and recommendation and a second motion to stay and compel arbitration, both of which provided copies of three documents that had not been attached to the initial motion. Those documents, all from 1999, were: (1) LifeTime's Letter of Intent to Purchase Svete's exclusive right to market viatical settlement sales products; (2) the resulting Purchase Agreement between LifeTime Capital and "David W. Svete, an individual"; and (3) the related Consultant Agreement between LifeTime Capital and "DAVID W. SVETE, a person of full age of majority and a resident of the State of Florida." These documents, Svete argued, demonstrate that he actually had entered into a contract with LifeTime in his individual or personal capacity. He argued that claims arising out of his relationship with LifeTime were subject to mandatory arbitration pursuant to the arbitration clause in the Consultant Agreement. Additionally, Svete claimed that he could compel arbitration under the "multitude" of agreements between LifeTime Capital and each of its investors, all of which were purported to contain arbitration clauses.[3]

In two brief orders entered December 12 and 18, 2006, respectively, the district court

---

[3]Svete's motion also asserted—without argument—that the Receiver lacks standing to "represent the 3,000 plus LCI customers." There is some disagreement about whether the Receiver is asserting breach of contract claims under contracts between LifeTime and its investors, and whether he would have standing to do so. *See Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 793-96 (6th Cir. 2009); *Liberte Capital Group LLC v. Capwill*, 248 F. App'x 650, 656-57 (6th Cir. 2007) (holding that, regardless of the scope of the court's authorization, the Receiver only had standing to bring claims belonging to the receivership entities, and not claims belonging to third parties). These issues are beyond the scope of this appeal.

overruled Svete's objections based on "a de novo review of the record in this case" and denied Svete's second motion to compel arbitration because it "provide[d] no valid reason to alter the Court's prior rejection of mandatory arbitration in this case." Svete moved for reconsideration, again attaching the Consultant Agreement between himself and LifeTime Capital and arguing that the Consultant Agreement was entered into in his individual capacity. The motion for reconsideration, a time-tolling motion for purposes of this appeal, was denied along with several other of Svete's objections and motions in an order entered March 28, 2007.

That order, in pertinent part, emphasized that Svete had already unsuccessfully raised the issue of arbitration twice in this case and twice in *Davis v. LifeTime Capital*, No. 04-cv-0059. Specifically noting that it had reviewed the Consultant Agreement, however, the district court no longer relied on the finding that Svete had not entered into the agreements in his individual or personal capacity.[4] Instead, the district court stated that the "Consultant Agreement was entered into at a time when Svete was in control of LifeTime." The significance of this proposition appears to be that the Consultant Agreement was the product of fraud. As the district court proceeded to explain:

> Entry into the Consultant Agreement was one part of Svete's extensive

---

[4]Although this rationale was discarded, to the extent that it can be read to conclude that nonparties may not enforce arbitration agreements we note that nonsignatories may be bound to an arbitration agreement under ordinary state law contract and agency principles. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003); *see also Arthur Andersen, LLP v. Carlisle*, 129 S. Ct. 1896, 1902 (2009) (stating that a litigant who was not a party to an arbitration agreement may invoke the stay provisions if the relevant state contract law would allow him to enforce the arbitration agreement).

schemes to remove significant funds from the treasury of LifeTime for Svete's individual benefit. Svete's extensive schemes to remove significant funds from LifeTime were the basis for his conviction for fraud, conspiracy and money laundering. Since Svete seeks to enforce an arbitration clause in a contract that is the result of fraud or coercion, arbitration will not be compelled. *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1118 (3d Cir. 1993) (it is well settled that a party may not be compelled to arbitrate its claims where the arbitration agreements are a result of fraud or coercion).

The district court stated, in closing, that arbitration would not be compelled because "Svete seeks to enforce an arbitration clause in a contract that is the result of fraud or coercion." Defendant appealed.

## II.

### A.    *Res Judicata*

We decline the Receiver's invitation to affirm on grounds not reached by the district court; namely, that Svete's request for arbitration is barred by the preclusive effect of the interlocutory rulings in *Davis* rejecting Svete's efforts to compel arbitration in that case. First, the Receiver relies explicitly on the doctrine of *res judicata*, or claim preclusion, but appears to confuse it with *collateral estoppel*, or issue preclusion. It is issue preclusion that "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 128 S. Ct. 2161, 2171 (2008) (citation omitted).[5]

---

[5] Claim preclusion bars a subsequent action when there is: "'(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.'" *Becherer v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 193

Second, even cursory consideration of the relevant pleadings in *Davis* suggests that the requirements for issue preclusion are probably not met. Issue preclusion requires that (1) "the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding"; (2) "determination of the issue must have been necessary to the outcome of the prior proceeding;" (3) "the prior proceeding must have resulted in a final judgment on the merits;" and (4) "the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *NAACP, Detroit Branch v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987); *see also Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 982 (6th Cir. 2000).

In *Davis*, an investor filed suit against both Svete and LifeTime Capital. Svete's first motion to compel arbitration sought to realign the parties so that LifeTime would be deemed a plaintiff and Svete could seek to compel arbitration under the Consultant Agreement. The magistrate judge, presiding by consent of the parties, denied the motion in a summary order based on her "due consideration of the arguments set forth in the motion and in consideration of the fact that the instant action is an equitable proceeding." Svete's second motion to dismiss sought to compel arbitration under the customer agreement entered into between Davis and LifeTime Capital. The magistrate judge, giving the reasons that would be repeated in this case, denied this motion both because Svete had not produced any documentation and because the allegation that *LifeTime's* contract with Davis included an arbitration provision

F.3d 415, 422 (6th Cir. 1999) (en banc) (citation omitted).

did not establish that *Svete* had entered into any such agreement in his individual or personal capacity. (*Davis*, Doc. 663, pp. 2-3.) If nothing else, it appears that the issue of the enforceability of the arbitration provision in the Consultant Agreement between LifeTime and Svete was either not raised or not actually litigated in *Davis*.

In addition, as the Receiver acknowledges, no final judgment has been entered in *Davis*. Under Ohio law, which would apply to the extent that jurisdiction in *Davis* is based on diversity of citizenship, interlocutory orders cannot be the basis for *res judicata* or *collateral estoppel*. *See Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458, 464 (6th Cir. 2003).[6] The Receiver relies on the Tenth Circuit's statement that "interlocutory orders denying arbitration have been deemed final and preclusive for *res judicata* purposes" when the order effectively and conclusively determines the arbitration issue. *Stifel, Nicolaus & Co. v. Woolsey & Co.*, 81 F.3d 1540, 1545 (10th Cir. 1996) (citing cases).

*Stifel* relied, in turn, on *Towers, Perrin, Forster & Crosby, Inc. v. Brown*, 732 F.2d 345, 349-50 (3d Cir. 1984), for the proposition that the preclusive effect depends on the finality of the decision. The Third Circuit has since explained that it was significant to the decision in *Towers* that, although interlocutory, the order denying arbitration had been affirmed on appeal in the state court and could not be reviewed again on appeal from a determination on the merits. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 158-59 (3d Cir.

---

[6]A federal-court judgment's preclusive effect is determined by federal common law, which in diversity cases "incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor*, 128 S. Ct. at 2171, n.4.

2001). This court has yet to address this line of authority, and we need not do so here because Svete was dismissed from *Davis* without prejudice and with the admonition that no judgment be entered against him. The Receiver has not shown that the interlocutory orders in *Davis* present a similarly final and conclusive decision on the merits.[7]

## B.      Arbitration

The Federal Arbitration Act (FAA) provides that a written agreement to arbitrate disputes arising out of a transaction in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable, including, first, whether the parties agreed to arbitrate; and, second, whether the specific dispute falls within the substantive scope of that agreement. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). A district court's decision refusing to compel arbitration or refusing to stay an action pending arbitration is reviewed de novo. *Id.*

The only arbitration clause Svete specifically identified is found in the Consultant Agreement, Section 15, which provided, in part, that:

> All disputes and controversies of every kind and nature between the parties to
> this Agreement arising out of or in connection with this Agreement including,
> but not limited to, its existence, construction, validity, interpretation or
> meaning, performance, non-performance, enforcement, operation, breach,

---

[7]The Receiver also asserts that the lapse in time between Svete's first and second motions for a stay in *Davis* waived any right to seek arbitration in the instant case. This is a fact-based determination that was not developed, or ruled upon in the district court. This claim is not properly before us.

continuance, or termination thereof shall be submitted and settled by arbitration in accordance with the Commercial Rules of the American Arbitration Association.

The Consultant Agreement was executed by Svete, individually, and by Roger W. Lange, as President of LifeTime Capital. It is undisputed that the Receiver, asserting the claims of LifeTime, is bound to arbitrate to the same extent that LifeTime would have been absent the appointment of a receiver. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 627 (6th Cir. 2003). As outlined above, the district court ultimately concluded that the Receiver could not be compelled to arbitrate because "Svete seeks to enforce an arbitration clause in a contract that is the result of fraud or coercion."

### 1.     Fraud

As the Supreme Court explained most recently in *Preston v. Ferrer*, 552 U.S. 346, 353 (2008), "[a] recurring question under § 2 [of the FAA] is who should decide whether 'grounds . . . exist at law or in equity' to invalidate an arbitration agreement." Restating the holding in *Prima Paint*, the Court explained that "attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken." *Id*. (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)). The Court in *Prima Paint*, guided by the language of § 4 of the FAA, held that "'if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it.'" *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) (quoting *Prima Paint*, 388 U.S.

at 403-04). Otherwise, "'the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.'" *Id.*

The Receiver, urging us to affirm, contends that the district court's decision rested on a finding that the allegations of fraud were directed at the arbitration clause itself. It is not clear at all, however, that this was the case. The district court's order did not say as much. The complaint did not obviously allege fraud in the inducement of the arbitration clause itself. *Fazio*, 340 F.3d at 394 (quoting *Arnold v. Arnold Corp.-Printed Commc'ns. for Bus.*, 920 F.2d 1269, 1278 (6th Cir. 1990)). Nor did the Receiver's arguments in opposition to arbitration clearly assert that the fraud pertained specifically to the arbitration agreement. The Receiver asks that we infer that he did from his reference to "the Consultant Agreement and related transactions" and his citation to *Carro Rivera v. Parade of Toys, Inc.*, 950 F. Supp. 449, 453 (D.P.R. 1996). The Receiver states that the district court also relied on *Carro*, but we cannot conclude as much since the district court did not cite or discuss that case.[8]

Nonetheless, to the extent that *Carro* may be read to support the Receiver's position, it is inconsistent with this court's pronouncement that "under *Prima Paint*, allegations of

---

[8]The court in *Carro* denied arbitration of all the claims, including the fraud claim, because claims did not "arise under" the contracts containing the arbitration agreements. The court concluded as well that the fraud claims were not arbitrable under *Prima Paint* because the plaintiff had alleged that the arbitration clause was part of the scheme to defraud creditors. Without more discussion, the court stated that, accepting the plaintiff's allegations as true, "the arbitration clause was integral to [the] scheme to defraud since it ensured that defrauded creditors, who were generally small business persons in Puerto Rico, would be unable to pursue their claims in a distant forum [in Kansas]." *Id.*

fraudulent schemes are 'no longer sufficient to overcome the strong federal policy in favor of arbitration.'" *Fazio*, 340 F.3d at 394 (quoting *Arnold*, 920 F.2d at 1281). This court has specifically rejected as insufficient allegations that the arbitration agreement was used to further a fraudulent scheme, where the plaintiff failed to identify any misrepresentations particular to the arbitration agreement separate from the contract as a whole. *See, e.g.*, *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 491 (6th Cir. 2001) ("Allegations that the arbitration agreements furthered the fraudulent scheme are nevertheless arbitrable under *Prima Paint*."). We find that the district court erred by refusing to compel arbitration on the grounds that the Consultant Agreement as a whole was the product of fraud.

### 2.      Existence or Validity

Seeking to avoid the *Prima Paint* rule, the Receiver also argues that his challenge is actually to the existence—as opposed to the validity—of the contract. In other words, the Receiver argues that there is an issue whether the parties agreed to arbitrate their disputes at all. Although some circuits viewed *Prima Paint* as not requiring arbitration of a claim that the entire contract was void from its inception, the Supreme Court specifically disavowed the void/voidable distinction in *Buckeye*. 546 U.S. at 446.

At issue in *Buckeye* were claims that the lender made illegal usurious loans disguised as check cashing transactions. The plaintiffs opposed arbitration of their claims under the contracts' arbitration provisions on the grounds that the contracts violated state statutes and were therefore void *ab initio*. The Supreme Court explained that challenges to the validity

of arbitration agreements are divided into two types: those that challenge the validity of the

agreement to arbitrate itself; and those that challenge the contract as a whole on grounds that

affect the entire agreement (such as fraud), or on the ground that one provision renders the

whole contract invalid. *Id*. at 444. Because the claim in *Buckeye* that the whole contract

(including the arbitration clause) was rendered invalid was one of the second type, the

arbitration agreement was enforceable and the challenge was subject to arbitration. *Id*. at

446. In a footnote, however, the Court cited several of the cases that drew the void/voidable

distinction and explained that:

> The issue of the contract's validity is different from the issue whether
> any agreement between the alleged obligor and obligee was ever concluded.
> Our opinion today addresses only the former, and does not speak to the issue
> decided in the cases cited by respondents (and by the Florida Supreme Court),
> which hold that it is for courts to decide whether the alleged obligor ever
> signed the contract, *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851 (CA11
> 1992), whether the signor lacked authority to commit the alleged principal,
> *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99 (CA3 2001), *Sphere Drake Ins.
> Ltd. v. All American Ins. Co.*, 256 F.3d 587 (CA7 2001), and whether the
> signor lacked the mental capacity to assent, *Spahr v. Secco*, 330 F.3d 1266
> (CA10 2003).

*Id*. 444, n.1. The Receiver relied on several of these same cases in support of the contention

that his challenge to the Consultant Agreement should be decided by the court and not an

arbitrator. We find, as in *Buckeye*, that the Receiver is challenging the validity, rather than

the existence, of the Consultant Agreement.[9]

---

[9]Similarly, this court's pre-*Buckeye* decisions rejected efforts to avoid arbitration on the grounds that
the arbitration clause was unenforceable because the contract it was part of was void for illegality, finding
that the challenge was to the substance, rather than the existence, of the contract. *See Burden*, 267 F.3d at
487; *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Kean-Argovitz Resorts*, 383 F.3d 512, 516-

This is not a case in which it is alleged that the signor did not sign the contract, was an agent without authority to bind his principal, or lacked the mental capacity to assent. Rather, the Receiver argues that the signor acted "ultra vires," or outside his express authority, because his actions were allegedly taken in breach of the fiduciary duties he owed to the corporation. Relying on Ohio law, which we assume for purposes of appeal would be the applicable state law, the Receiver argues that Lange's alleged breach of fiduciary duty stripped him of express or apparent authority to enter into the contract. The case cited for this proposition, however, did not so hold.

In *Johnstown Manufacturing, Inc. v. Haynes*, 557 N.E.2d 1221, 1223 (Ohio App. 1988), an employer sued its bank for cashing a check signed by an employee who pocketed the money. As the court explained, the question was whether the employer or the bank should be liable for the acts of an unfaithful servant under Ohio's commercial code. The employee was not authorized to conduct the specific transaction, but was an authorized signor such that the code provisions dealing with unauthorized signatures did not apply. The court held that because the bank was a holder in due course, the employer was barred from asserting a negligence claim against the bank. *Id*. at 1223-24. *Johnstown* does not suggest that a claim that a contract executed by one authorized to do so but allegedly in breach of his fiduciary duties is an attack on the existence as opposed to the validity of the contract. *See also Bd. of County Comm'rs v. L. Robert Kimball & Assocs.*, 860 F.2d 683, 685 (6th Cir.

17 (6th Cir. 2004).

1988) (holding claims that contracts were ultra vires was a legal defense to enforceability that was properly arbitrated under *Prima Paint*); *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp.2d 722, 734 (S.D. Ohio 2009) (noting contract may be void for reasons pertaining to breach of fiduciary duty).

In this case, the Receiver alleged that Lange, as President of LifeTime, executed an "outrageous" consulting agreement while LifeTime was effectively under Svete's control, by which LifeTime purchased Svete's exclusive rights as a marketing agent for $2 million and agreed to pay Svete at least $500,000 per month. This, it is argued, was in breach of Lange's fiduciary duties because this contract contributed to the fraud by allowing Svete to maintain control over LifeTime while appearing to have removed himself from its governance, by providing Svete compensation that had no rational relationship to the services he provided, and by serving as a means for Svete to divert assets from LifeTime for his personal benefit. We have no difficulty concluding that the Receiver's challenge is to the validity or substance of the contract such that he may not avoid application of *Prima Paint* on this basis.

Importantly, the question before us is not whether the allegations can be proved, but whether the challenge to the enforceability of the contract is to be decided by the court or an arbitrator. *See Preston*, 128 S. Ct. at 987. Even so, this appeal does not resolve that issue entirely. As noted earlier, before compelling arbitration, the court must engage in a limited review to determine not only whether there is an agreement to arbitrate, but also whether the

specific dispute falls within the substantive scope of that agreement.

For the reasons set forth above, we **REVERSE** the district court's decision refusing to compel arbitration and **REMAND** for further proceedings consistent with this opinion.

ROGERS, J., dissenting.

Defrauded investors who have not entered into arbitration agreements presumably do not have to arbitrate their fraudulent conveyance claims against third-party recipients of their money, even if the fraudulent conveyance (by the fraudfeasor to the third party) itself involved a contract with an arbitration clause.  Assuming that this is so, the same should be true for a receiver appointed to recover on claims against third-party recipients where the basis for the receiver's action is fraud on the investor rather than some obligation that runs from the third party to the receiver's principal.  I am therefore not able to conclude that arbitration should be required in the present case.

Cases like *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967), and *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir. 2003), are different.  When an investor contracts with a fraudfeasor (e.g., a broker), with an arbitration clause, and then sues the broker (e.g. for fraudulent inducement to contract), those cases make clear that a general fraud-in-the-inducement claim will not be enough to avoid arbitration.  This should be contrasted with, for instance, a hypothetical situation in which an investor contracts with a broker to invest investor's money in viaticals, and the broker fraudulently gives the money to someone he is in cahoots with (e.g., his brother), let's say by means of a "contract" to pay the brother millions for some worthless items.  An arbitration clause in the *latter* contract should not be enforceable against the investor when the investor sues the brother to get the investor's money back.  It should be no different if the brother is sued by a receiver for the

broker, rather than by the investor, if the receiver is asserting the interests of the investor, not the broker.

It is true that in a somewhat similar case, *Javitch v. First Union Securities*, 315 F.3d 619 (6th Cir. 2003), we held that a receiver was bound by arbitration agreements "to the same extent that the receivership entities [i.e., the broker in the above example] would have been absent the appointment of the receiver." *Id.* at 627. *Javitch* appears to be different in an important respect, however, in that the receiver in *Javitch* was found to have been asserting only claims that belonged to the receivership entities. Indeed, *Javitch* recognized that a receiver *may* stand in the shoes of the creditor as well as of the debtor, *id.* at 626, although the district court in *Javitch* had properly found that the receiver asserted only claims belonging to the receivership entities, *id.* at 627. This conclusion was based on an assessment of both the claims being asserted by the receiver and the authority granted to him. If the receiver (Moran in this case) could be ascertained to be bringing suit to assert the interests of the defrauded investors (by examination of the nature of the claims and the order appointing the receiver), then the receiver would not necessarily be bound by the arbitration agreement, *id.* at 626.

The receiver's claims in the instant case do not appear to be based so much on Svete's obligations to LifeTime as upon Svete's obligations to the defrauded investors.[10] See, for

---

[10] That the receiver may be asserting the interests of the investors does not affect the receiver's standing to bring claims as receiver of LifeTime, which was injured by the depletion of its assets. *See Scholes v. Lehman*, 56 F.3d 750, 753-55 (7th Cir. 1995).

example, the excerpts below. LifeTime would really have no claim against Svete were it not that the contracts against Svete allegedly constituted fraud on the investors. It follows that, under the contingency preserved in *Javitch*, the receiver is bound by the arbitration agreement no more than the investors would be in a suit against Svete for receiving their money knowing it was rightfully theirs. I would therefore remand for the district court to determine, based on an assessment of both the claims being asserted by the receiver and the authority granted to him, whether the receiver is bringing suit to assert the rights of the defrauded investors. If so, arbitration should not be required.

Below are some excerpts from the Complaint suggesting that the rights asserted are those of persons buying viatical contracts through LifeTime, as contrasted to rights of LifeTime against Svete (emphases added):

3.      Following his appointment, the Receiver has learned, among other things, of the existence of certain transactions which resulted in the diversion of significant funds from LifeTime accounts *to the detriment of LifeTime's investors*.

. . .

26.      The Order of Appointment granted the Receiver the authority to, among other things, take exclusive control and possession of all receivership assets and "take any all action as the Receiver may deem necessary or prudent" to "protect the interests of the beneficial owners" of the LifeTime Portfolio of life insurance policies (Order of Appointment, ¶ 12). Such beneficial owners are primarily those individuals and entities who

invested money with LifeTime ostensibly for the purchase of one or more viatical settlement contracts.

27.    The Order of Appointment was modified and/or clarified on May 5 and December 2, 2004.  Each of these modifying orders clarified the expansive scope of the Receiver's authority to take the steps necessary *to protect the interests of LifeTime's investors*.

. . .

52.    In 1997 and continuously through the present, Defendants have continued the fraudulent scheme described above through continued *misrepresentations to LifeTime investors*.

. . .

67.    Defendants owed, at all times pertinent to Plaintiff's Claims for Relief set forth in this action *a fiduciary duty to investors of LifeTime* to ensure that the life expectancies were accurate, that the integrity of the premium reserve account and the funds deposited therein were maintained, that the Portfolio was preserved and not depleted, that actions not be taken rendering LifeTime insolvent or unable to pay its obligations as and when they became due, and that all transactions entered into by LifeTime were reasonable and prudent and in the best interests of LifeTime *and its investors* and not merely Svete or his affiliated entities and/or business associates.