NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0303n.06
No. 18-1493

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**REBECCA WILSON, et al.,**

    **Plaintiffs-Appellants,**

v.

**5 CHOICES, LLC, et al.,**

    **Defendants-Appellees.**

FILED
Jun 12, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
MICHIGAN

BEFORE:    CLAY, GILMAN, and KETHLEDGE, Circuit Judges.

**CLAY, Circuit Judge.** Rebecca K. Wilson and twenty other Plaintiffs appeal the district court's dismissal of Plaintiffs' claims against 5 Choices, LLC and twenty-five other Defendants. Plaintiffs argue on appeal that the district court erred in dismissing their claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and erred in denying Plaintiffs leave to file a third amended complaint.

For the reasons set forth below, we **AFFIRM IN PART** and **REVERSE IN PART** the district court's judgment, and **REMAND** for further proceedings.

## STATEMENT OF THE CASE

### Factual Background

Plaintiffs are fourteen individuals and seven corporate entities associated with some of those individuals,[1] who allege that Defendants, consisting of twenty-six corporate entities,

---

[1] Plaintiffs are Rebecca K. Wilson; Dennis Houtz; Robert Wong and his brother Kenneth Wong; Mike Hampshire and his corporation Lion's Fan, LLC; Linda Saenz and her corporation Abby Creek Investment LLC; James Dunn; Pascal and Simone Vohrandik and their corporation

defrauded Plaintiffs and other investors with a complex scheme in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and state law—although the nature and scope of the state-law claims are never clearly defined.

Although this case involves twenty-one Plaintiffs making claims against twenty-six Defendants and therefore involves numerous complicated sets of facts, the facts as relevant to this appeal, which relates largely to dismissal of claims due to the existence of forum-selection and arbitration clauses in the relevant contracts, are more straightforward. Plaintiffs' claims concern actions that one or more Defendants took individually, as well as the actions Defendants undertook as a single enterprise or conspiracy, which Plaintiffs refer to as the "Buying Summit Fraudulent Enterprise." Plaintiffs allege claims relating to damages in connection with contracts they made with one or more Defendants in the course of being deceived by the Enterprise. There are three types of contracts at issue, which correspond to the three phases of the alleged conspiracy.

First, each individual Plaintiff attended one or more initial seminars sponsored by Defendants. The seminars were advertised as presenting the opportunity to invest in real estate with self-described "Author and Millionaire Mentor" Dean Graziosi or to hear about such opportunities from guest speakers Scott & Aime Yancey from the real-estate reality television show "Flipping Vegas." (R. 37, Complaint Page ID# 1991, 2015.) After the seminars, Plaintiffs executed contracts to attend a "Buying Summit" arranged by Defendant Yancey, LLC; Yancey Events; or Insider's Financial Education LLC (which the parties and the district court refer to as "Education Defendants"). Education Defendants promised that at the Buying Summit Plaintiffs would receive advice about real estate purchases and the opportunity to purchase real estate at

___

13607 Virgil St., LLC; Joanne Beldotti; Ramona Lorraine Solano-Owen and her three corporations Greiner 11831, LLC, Coyle 12071, LLC, and Sarsfield 12460, LLC; Eva Thode; and Layne and Audrey Lundstrom and their corporation Invicta Legato Investments, LLC.

below-market prices.  Every contract executed with Education Defendants contained an arbitration clause.

At these Buying Summits, Plaintiffs were shown information about properties, prices at which they could buy the properties, and the purported market prices of the properties (which were represented as being higher than Defendants' offered purchase prices).  Plaintiffs, either individually or in their corporate forms,[2] took advantage of the opportunity presented at the Buying Summit and entered into contracts with one or more Defendants to purchase real estate (these Defendants will be referred to as "Property Defendants").[3]  Plaintiffs allege in their complaint that the market prices of these properties were in fact far below the offered purchase prices.  Each of these contracts contained forum-selection and choice-of-law clauses designating Utah as the proper forum and source of law.

Some Plaintiffs, in order to purchase these properties, entered into loan agreements with one or more Defendants, using the purchase property as security (these Defendants will be referred to as "Lending Defendants").[4]  Each of these contracts contained either an arbitration clause or

---

[2] Plaintiffs allege that Defendants encouraged them to create Utah-based limited liability corporations to purchase the properties.  In their Complaint, Plaintiffs argue that the corporations' "creation and registration in Utah [were] due solely to allegedly expert advice provided . . . by agents of the Defendants as part of the Buying Summit Fraudulent Enterprise for the purpose of eliminating the possibility of their victims being able to file a diversity of citizenship action against the Utah-based Defendants in U.S. District Court."  (R. 37, Page ID# 1952.)

[3] The Property Defendants are 5 Choices, LLC; BuyPD, LLC; DLS Properties, LLC; Expansion Properties, LLC; EZ Street Properties, LLC; FrontSide Properties, LLC; Green Apple Homes, LLC; Improvement Homes, LLC; Interactive Homes, LLC; Malibu Breeze Properties, LLC; Max Ultra, LLC; Patriot Homes, LLC; Property Direct, LLC; Ready Prop; Red Apple Homes, LLC; Red List Homes, LLC; Scree 44, LLC; Screaming Eagle Properties, LLC; and Silver Tie Homes, LLC.

[4] The Lending Defendants are American Cash Funding; Income Property USA, LLC; and Insider's Cash, LLC.

forum-selection and choice-of-law clauses designating Utah as the proper forum and source of law.

Plaintiff Eva Thode was unique among Plaintiffs in that she also purchased from Lending Defendant Income Property USA, LLC an assignment of its interest in two non-recourse loan agreements, which were between Income Property USA, LLC, and individuals not party to this lawsuit, secured by properties purchased by those individuals. The contracts of assignment contained no forum-selection or arbitration clauses, but the underlying loan agreements contained a choice-of-law clause specifying the use of Utah law and a forum-selection clause specifying that any action arising out of the agreements "shall be brought . . . in the courts of the State of Utah, or alternatively, in the court of the state and county w[h]ere the real property securing the Loan is located, at the sole discretion of the lender." (R. 40-2, Chart Summarizing Contracts, Page ID# 2269.) The property securing both loans is located in Michigan; Plaintiff Thode therefore argues that the Eastern District of Michigan is the proper venue for her claims against Income Property USA, LLC, arising out of her assignment contract.

Finally, although no Plaintiff entered into any contract with John Graham, Inc. ("JGI"), the complaint alleges that JGI was involved in Defendants' Enterprise in that JGI initially purchased and rehabilitated the properties that Plaintiffs eventually purchased from Property Defendants.

## Procedural History

After Plaintiffs filed their Second Amended Complaint, Lending Defendants, Education Defendants, Property Defendants, and JGI filed separate motions to dismiss.

The district court first dismissed Plaintiffs' claims against Lending Defendants, holding that the claims were subject to the contracts' arbitration or forum-selection clauses and that those clauses were enforceable. The district court did not decide whether Plaintiffs' contracts with Lending Defendants were valid, instead leaving this decision to be made in the first instance by the arbitrator or forum specified in the arbitration or forum-selection clauses.

The district court then dismissed Plaintiffs' claims against Education Defendants, holding that the claims were subject to arbitration clauses in the Plaintiffs' contracts with these Defendants and that dismissal was therefore proper pending the outcome of arbitration. Finally, the district court dismissed Plaintiffs' claims against Property Defendants and JGI. The district court held that Plaintiffs' claims against Property Defendants were subject to enforceable forum-selection clauses, and the court therefore dismissed these claims with prejudice. The district court held that Plaintiffs had failed to allege facts pursuant to which relief could be granted against JGI, and the court therefore dismissed these claims with prejudice.

After the district court denied Plaintiffs' motions for reconsideration and a judgment issued for Defendants in the case, Plaintiffs filed a Motion to Alter or Amend Judgment and Motion for Leave to File an Amended Complaint. In response to Plaintiffs' arguments, the district court clarified that its dismissal of Property Defendants' claims was "with prejudice *as to this district*" only and Plaintiffs were free to file their claims in the proper venue. (R. 70, Page ID# 5237.) The district court denied Plaintiffs' request to amend the complaint.

Plaintiffs timely appealed the district court orders dismissing their claims and its order denying Plaintiffs leave to amend their complaint.

## DISCUSSION

Plaintiffs' arguments on appeal concern the dismissal of their claims against the four types of defendants in this case (*i.e.*, Property Defendants, Education Defendants, Lending Defendants, and JGI), and the refusal of the district court to permit Plaintiffs to file a third amended complaint. We will discuss the claims concerning dismissal, followed by the denial of leave to file a third amended complaint.

## I.      Dismissal of Plaintiffs' Claims

### Standard of Review

"We review *de novo* a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (citing *VIBO Corp. Inc. v. Conway*, 669 F.3d 675, 683 (6th Cir. 2012)). To survive a motion to dismiss, a complaint "does not need detailed factual allegations," but should identify "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted). A complaint also "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

We also review *de novo* the enforceability of forum-selection and arbitration clauses. *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006); *Moran v. Svete*, 366 F. App'x 624, 629 (6th Cir. 2010).

**Analysis**

Although this appeal largely addresses the application of forum-selection and arbitration clauses in the contracts upon which Plaintiffs seek to recover, it is nevertheless helpful to provide some background on Plaintiffs' underlying RICO claims.

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, creates a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." *Beck v. Prupis*, 529 U.S. 494, 495 (2000) (quoting 18 U.S.C. § 1964(c)). "Subsection (d) of § 1962 in turn provides that '[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [§ 1962].'" *Id.* As relevant to this appeal, subsection (c) of § 1962 prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, [from] conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962.[5]

This Court has stated that to make out a RICO claim, a plaintiff must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 483 (6th Cir. 2013) (quoting *Moon v. Harrison Piping Supply,* 465 F.3d 719, 723 (6th Cir. 2006)). Further, "[i]n addition to establishing that a given group of defendants conducted the affairs of a qualifying enterprise through a pattern of

---

[5] Under RICO, "racketeering activity" is defined to include, as relevant to this case, mail fraud in violation of § 1341 and wire fraud in violation of § 1343. 18 U.S.C. § 1961(1). The term "enterprise" is defined to "include[] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4). A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." *Id.* § 1961(5).

racketeering activity, civil RICO plaintiffs must show that the RICO violation was the proximate cause of the injury to their business or property." *Id.* at 484. If a plaintiff establishes that multiple defendants participated in a RICO enterprise, then the defendants will be jointly and severally liable for all damages resulting from the enterprise's RICO violations. *Fleischhauer v. Feltner*, 879 F.2d 1290, 1301 (6th Cir. 1989).

Plaintiffs allege that Defendants committed numerous instances of mail and wire fraud and assert that "[e]ach Defendant has a distinct role in perpetuating the Defendants' fraudulent scheme and they are each individually liable to [all] Plaintiffs . . . for their damages." (*See, e.g.*, R. 37, Complaint, Page ID# 2116.) Plaintiffs allege that Defendants (hereinafter referred to collectively as the "Buying Summit Fraudulent Enterprise") "constituted an association in fact and therefore are an 'enterprise' as that term is defined in 18 U[.]S.C. §1961(4) and used in 18 U[.]S.C. §1962." (R. 37, Page ID# 2163.) The complaint further alleged that every Defendant "conspired to and did derive or receive income from a pattern of racketeering activity, some part of which was used to operate the Buying Summit Fraudulent Enterprise, enabling the Buying Summit Fraudulent Enterprise to defraud plaintiffs as set forth herein" and that the Defendants "acted in concert, with specific, well-defined roles in the Buying Summit Fraudulent Enterprise." (R. 37, Complaint Page ID# 2163–64.) Plaintiffs allege that the Defendants' enterprise constituted a pattern of racketeering activity, lasting at least three years and including "multiple acts of mail and wire fraud," which were "part of their overall scheme and [] a regular part of the conduct of the business of the enterprise for at least three years." (R. 37, Page ID# 2164–65.)

There was no need for the district court to address the merits of most of Plaintiffs' RICO claims because it dismissed the claims due to the existence of enforceable arbitration or forum-selection clauses in the contracts on which Plaintiffs sought to recover damages. *See Security Watch, Inc. v. Sentinel Sys., Inc.,* 176 F.3d 369, 371, 374–76 (6th Cir. 1999) (affirming the district court's dismissal pursuant to an unspecified subsection of Federal Rule of Civil Procedure 12(b) to enforce a forum-selection clause). This Court has held that a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is a permissible way to enforce forum-selection and arbitration clauses. *See Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 366 (6th Cir. 2008) (per curiam); *Milan Exp. Co., Inc. v. Applied Underwriters Captive Risk Assur. Co., Inc.*, 590 F. App'x 482, 483–86 (6th Cir. 2014).

Plaintiffs argue that their claims should not have been dismissed. Although Plaintiffs divide their briefing by the four types of defendants (Property, Education, Lending, and JGI), the arguments Plaintiffs make with respect to each type of defendant are largely identical. Broadly stated, Plaintiffs argue that the clauses should not be enforced and, in the alternative, even if they are enforced, they do not bar all of Plaintiffs' claims. We will discuss these claims at greater length with respect to Plaintiffs' claims against Property Defendants and provide a brief analysis with respect to the other three types of defendants to avoid unnecessary repetition.

### a. Property Defendants

Each contract that existed between a plaintiff and a Property Defendant in this case contained a forum-selection clause. Some contracts contained a clause stating:

> GOVERNING LAW AND JURISDICTION: This contract shall be governed by the laws of the State of Utah. Jurisdiction shall lie exclusively with the courts within the State of Utah.

(R. 40-2, Page ID# 2250.) The remainder contained a clause stating:

UTAH LAW GOVERNS; JURISDICTION AND VENUE: This Agreement shall be governed by, and construed in accordance with applicable Utah Law, without reference to the conflicts of laws principle. Any litigation between the parties shall take place in the applicable courts located in Utah County, Utah, which state and federal courts shall have exclusive jurisdiction over this Agreement, and the parties expressly consent to such jurisdiction and venue.

(R. 40-2, Page ID# 2255.)

The district court dismissed Plaintiffs' claims against Property Defendants because it held that the forum-selection clauses were enforceable and covered Plaintiffs' claims—and to the extent that the clauses did not cover some of Plaintiffs' claims, those claims failed for failure to allege facts with particularity sufficient to overcome a motion to dismiss. On appeal, Plaintiffs raise three primary arguments for reversal: 1) the forum-selection clauses are invalid because the contracts were the product of fraud or of a violation of the fiduciary duty that Plaintiffs allege Defendants owed them; 2) the forum-selection clauses should not be enforced because enforcing those clauses—along with the arbitration clauses—would require Plaintiffs to raise their claims against Defendants in multiple fora; and 3) even if the forum-selection clauses are enforceable, Plaintiffs have alleged claims that are not subject to the clauses.[6] We will address each argument in turn.

First, Plaintiffs claim that the forum-selection clauses were invalid and unenforceable. The enforceability of forum-selection clauses is governed by federal law. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). "The Supreme Court has stated that in light of present-day commercial realities, a forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside." *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) (citing *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972)).

---

[6] Some of these arguments were made in the section of Plaintiffs' brief on appeal concerning the dismissal of their claims against Lending Defendants; however, these three arguments apply nearly identically to Plaintiffs' claims against Education Defendants, Lending Defendants, and Property Defendants because each argument is based on Plaintiffs' allegations of a common enterprise between all Defendants.

The district court correctly identified that under this Court's precedent, "[u]nless there is a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause to agree to inclusion of that clause in a contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause." (R. 61, Order, Page ID# 4542 (quoting *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006)). In other words, to hold that a forum-selection clause is not enforceable due to fraud, there must be allegations of fraud that are specific to the inclusion of the forum-selection clause. This is because there is generally no reason to doubt that the forum designated in the forum-selection clause can be trusted to decide in the first instance whether the contract as a whole is valid and enforceable. *Cf. Preston v. Ferrer*, 552 U.S. 346, 353 (2008) ("[A]ttacks on the validity of an entire contract, as distinct from attacks aimed at [an] arbitration clause, are within the arbitrator's ken."). In this case, Plaintiffs have made no allegations of fraud specific to the forum-selection clauses.

Further, although Plaintiffs allege that Defendants had and breached a fiduciary duty to Plaintiffs, none of these allegations are specific to the forum-selection clauses. Just as there is no reason to doubt the forum's ability to decide in the first instance whether the contracts at issue in this case are invalid or unenforceable as a result of fraud, *cf. Preston*, 552 U.S. at 353, neither is there reason to doubt the forum's ability to decide whether they are invalid because Defendants breached a fiduciary duty to Plaintiffs. Because Plaintiffs have made no arguments suggesting that the forum-selection clauses (rather than the contracts in their entirety) were the product of fraud or other misconduct, the district court did not err in dismissing Plaintiffs' claims to allow the forum designated in the forum-selection clauses to address the validity and enforceability of the contracts.

Plaintiffs' second and third arguments pertain to their allegations that their damages resulted from the common scheme undertaken by Defendants as part of the Buying Summit Fraudulent Enterprise.

Emphasizing the questions of law and fact that are common to all of their claims (inasmuch as they allege Defendants were affiliated in a RICO conspiracy), Plaintiffs' second argument is that requiring Plaintiffs to proceed in multiple fora would be unduly burdensome. Specifically, Plaintiffs argue that if these forum-selection and the arbitration clauses that Plaintiffs had with other Defendants (discussed below) are all enforced, Plaintiffs will be unable to "effectively . . . vindicate [their] statutory cause of action." (Appellants' Br. 32 (quoting *Mitsubishi Motors v. Soler Chrysler–Plymouth*, 473 U.S. 614, 637 (1985)). Characterizing their argument on appeal, Plaintiffs state, "The argument is not against the idea of an arbitration or forum selection clause per se. It is against a ruling that requires adjudication of a single RICO claim and, in fact, a claim regarding a single purchase of property, in multiple fora by each Plaintiff. This is untenable." (Appellants' Br. 24.)

However, Defendants point out that Plaintiffs' argument against multiple fora "makes no sense as an argument against enforcing the forum-selection clauses, since they permit all claims to be brought in a single forum: Utah. Rather, this argument against piecemeal litigation is best understood as an argument against enforcing the arbitration provisions." (Lending & Property Defendants Br. 26.) We agree. It may well be that this case is one which "[f]rom a practical standpoint . . . should be litigated as one case in one court in one [jurisdiction]." *See Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 443 (7th Cir. 2012). However, that does not imply that all of Plaintiffs' claims should be litigated in the Eastern District of Michigan. If one forum is proper, it makes more sense for that forum to be the forum designated in Plaintiffs' contracts

with Property Defendants (*i.e.*, the courts of Utah). The district court's dismissal of Plaintiffs' claims was without prejudice as to districts other than the Eastern District of Michigan, and Plaintiffs remain free to bring their claims in the courts of Utah. Just as the ultimate Utah forum will be able to decide whether the contracts are valid or not, that forum will be able to decide whether enforcing the arbitration clauses would prevent Plaintiffs from "effectively . . . vindicat[ing] [their] statutory cause of action." *Mitsubishi Motors*, 473 U.S. at 637. Thus, the risk of multiple fora does not require this Court to disregard the forum-selection clauses in Plaintiffs' contracts with Property Defendants, and the district court did not err in rejecting this argument.

Plaintiffs' final argument assumes *arguendo* that the forum-selection clauses in their contracts with Property Defendants are valid and, like Plaintiffs' second argument, relies on Plaintiffs' allegations that their damages resulted from the common scheme undertaken by Defendants as part of the Buying Summit Fraudulent Enterprise. Plaintiffs note that "[a]ll Plaintiffs . . . are claiming in the instant action that each Plaintiff suffered an injury proximately caused by the Defendants' fraudulent scheme." (Appellants' Br. 30.) Accordingly, Plaintiffs argue that even if the forum-selection clauses bar a plaintiff's claim against the Property Defendant with which the plaintiff had a contract (referred to as the "privity Defendant"), it was nevertheless error to dismiss that plaintiff's claims against all of the Defendants with which the plaintiff did *not* have a contract (referred to as the "non-privity Defendants"). As an illustration, Plaintiff Dennis Houtz only made property agreements with Property Defendants Frontline Properties, LLC and Max Ultra, LLC. Each of these contracts contains a forum-selection clause that would bar Houtz's suit in the Eastern District of Michigan against Frontline Properties, LLC or Max Ultra, LLC. However, Plaintiffs allege that because Houtz seeks damages against *all* Defendants (including a non-privity Property Defendant like Screaming Eagles Properties, LLC) for *all* of his damages

(including those damages resulting from his contracts with Frontline Properties, LLC and Max Ultra), his claims against Screaming Eagles Properties, LLC are not barred by the forum-selection clauses even if his claims against Frontline Properties, LLC and Max Ultra, LLC are.

This attempted loophole argument does not withstand scrutiny. It is significant to note that accepting this argument would effectively sever Plaintiffs' claims against the privity Defendants from those against the non-privity Defendants, putting this argument in tension with Plaintiffs' second argument that it is essential for all their claims to be brought in one forum. Indeed, other courts have rejected this type of argument, recognizing that to accept it would produce an illogical and inefficient result. *See, e.g.*, *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 440 (7th Cir. 2012). To avoid such a result, the Seventh Circuit in *Adams* applied a forum-selection clause to non-privity defendants alleged to be "in cahoots with" the contract signatory. *Id.* at 438. The court reasoned that "[h]aving agreed to [litigate] certain issues [in one forum], a [plaintiff] shouldn't be allowed, by the facile device of suing an affiliate of the other signatory of the [] agreement [with the forum-selection clause], to litigate them [in a different forum] instead." *Id.* at 440. Similarly, other courts have noted that "a range of transaction participants, parties and non-parties should benefit from and be subject to forum selection clauses" where "the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) (quoting *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984)).

Taking the allegations in Plaintiffs' complaint as true, Defendants' conduct is closely related to each of the contracts upon which recovery is sought. Plaintiffs allege that Defendants were affiliated in one conspiracy in which every Defendant "conspired to and did derive or receive income from a pattern of racketeering activity, some part of which was used to operate the Buying

Summit Fraudulent Enterprise, enabling the Buying Summit Fraudulent Enterprise to defraud plaintiffs as set forth herein" and that the Defendants "acted in concert, with specific, well-defined roles in the Buying Summit Fraudulent Enterprise." (R. 37, Page ID# 2163–64.)[7] Although Plaintiffs may be correct that all Defendants would be jointly and severally liable for the actions of all other Defendants in connection with this alleged conspiracy, *see Fleischhauer*, 879 F.2d at 1301, the potential liability in this case arises entirely out of the contracts that Plaintiffs made with Defendants. In this sense, "the alleged conduct of the non-[privity Defendants] is so closely related to the contractual relationship[s] that the forum selection clause[s] appl[y] to all [D]efendants." *See Manetti-Farrow, Inc.*, 858 F.2d at 514 n.5. This being the case, Plaintiffs should not be allowed to escape the enforceable forum-selection clauses they had with the privity Defendants merely by instead suing those Defendants' non-privity affiliates to recover on the very contracts containing the forum-selection clauses. *See Adams*, 702 F.3d at 440. Dismissal of Plaintiffs' claims against the non-privity Property Defendants was therefore proper.[8]

Thus, we affirm the district court's dismissal without prejudice of Plaintiffs' claims against Property Defendants.

---

[7] This Court need not decide whether all Defendants indeed were in a conspiracy or otherwise affiliated; it is enough that Plaintiffs' complaint alleges that this was the case. *Cf. Adams*, 702 F.3d at 443 (holding that a non-privity defendant who was "alleged to be a secret principal along with" a privity defendant could "enforce the forum selection clause on the same ground as" the privity defendant).

[8] Because these claims are barred by the contracts' forum-selection clauses, we do not reach the question of whether Plaintiffs' complaint failed to state a claim against the non-privity Property Defendants. Indeed, we do not find it necessary to address whether Plaintiffs have alleged sufficient facts to plausibly state a claim upon which relief can be granted against any Defendants. To the extent that there is a question about whether Plaintiffs' complaint plausibly stated a claim against one or more types of defendant, these will be issues for the proper forum to decide in the first instance.

### b. Education Defendants

Plaintiffs' contracts with Education Defendants contained an arbitration clause stating:

> By executing this Purchase Order, the Customer and the Company hereby agree that any and all disputes that arise between them concerning the Purchase Order or any terms of thereof, or that concern any aspect of the relationship between the Customer and the Company, shall be decided exclusively in binding arbitration conducted by the American Arbitration Association ("AAA"). Customer and Company further agree that each party will bear its own costs and attorneys' fees incurred in connection with the AAA arbitration proceeding.

(R. 40-2, Page ID# 2249.)[9]

Plaintiffs argue that these arbitration clauses are invalid and unenforceable; that enforcing these clauses in addition to the forum-selection clauses would require Plaintiffs to raise their claims in multiple fora and render them unable to vindicate their rights; and that even if these clauses bar a plaintiff's claims against the Education Defendant with which the plaintiff was in privity, they should not bar the plaintiff's claims against all other Defendants with which the plaintiff was not in privity. Because these arguments are nearly identical to the arguments raised as to why the forum-selection clauses did not bar Plaintiffs' claims against Property Defendants, the analysis with respect to these arbitration clauses proceeds similarly to the analysis in the preceding section.

Just as general allegations of fraud going to the contract as a whole do not render unenforceable a forum-selection clause, neither do they render invalid an arbitration clause. *Preston*, 552 U.S. at 353 ("[A]ttacks on the validity of an entire contract, as distinct from attacks aimed at [an] arbitration clause, are within the arbitrator's ken."). For this reason, Plaintiffs' allegations that fraud or a breach of Defendants' fiduciary duty caused Plaintiffs to enter into contracts with Education Defendants do not prevent enforcement of the arbitration clause.

---

[9] Eva Thode's contract with Yancey, LLC contained additional language specifying that the parties agreed to waive the right to a trial before a jury or judge and agreed that neither party would be able to "join or consolidate disputes by or against others in any arbitration" or proceed in a class action or in a private attorney general capacity. (R. 40-2, Page ID# 2267.)

Next, Plaintiffs' objection that enforcement of this arbitration clause would prevent them from vindicating their rights under RICO because it would necessitate multiple fora, as discussed above, may have some validity. Accordingly, Plaintiffs are free to bring their claims in Utah courts, which may decide in the first instance whether or not to enforce the arbitration clauses due to the concerns of litigating these claims in multiple fora.

For the reasons discussed above, Plaintiffs' arguments that their claims against non-privity Defendants are not subject to these arbitration clauses and should be permitted to go forward are without merit. *See Adams*, 702 F.3d at 440.

Thus, we affirm the dismissal without prejudice of Plaintiffs' claims against Education Defendants.

### c. Lending Defendants

Some contracts between Plaintiffs and Lending Defendants contained arbitration clauses. Other contracts contained forum-selection clauses allowing the lenders a choice of forum:

> [A]ny action or preceding seeking to enforce any provision of, or based on any right arising out of, this Agreement shall be brought against any of the parties in the courts of the State of Utah, or alternatively, in the court of the state and county w[h]ere the real property securing the Loan is located, at the sole discretion of the Lender.

(R. 40-2, Page ID# 2256.)

The district court held that arbitration clauses and forum-selection clauses in the relevant contracts justified dismissal of Plaintiffs' claims against Lending Defendants. Plaintiffs raise the same arguments discussed in the previous sections as to why dismissal was improper, which we reject for the same reasons discussed in those sections.

Plaintiffs make one additional argument as to why the district court erred in dismissing their claims. Plaintiffs argue that the district court erred in dismissing Eva Thode's claims against

Income Property USA arising out of the assignment contracts pursuant to which she received Income Property USA's rights in loan agreements with others who are not parties to this suit. The assignment contracts did not contain arbitration or forum-selection clauses,[10] but the district court never discussed the difference between Thode's claims and those of the other Plaintiffs. Because no forum-selection clause or arbitration clause bars Thode's claims against Income Property USA and because the district court failed to consider this fact, we reverse the district court's dismissal of Thode's claims against Income Property USA arising out of their assignment contracts. As discussed, it may be true that substantial common questions of law and fact exist across all of Plaintiffs' RICO conspiracy claims against all Defendants. *See Adams*, 702 F.3d at 443. To the extent that Thode's claim might be better heard in the same forum as all of Plaintiffs' other claims, the district court on remand will be free to entertain arguments as to *forum non conveniens*.

Thus, we affirm the district court's dismissal of all of Plaintiffs' claims against Lending Defendants, except Eva Thode's claims arising out of her assignment contracts with Income Property USA. With respect to the latter claims, we reverse the district court judgment and remand for further proceedings consistent with this opinion.

### d. JGI

Although it differs from the other Defendants in that it has no contract with *any* plaintiff, JGI is essentially just another non-privity defendant. The only reason Plaintiffs are able to sue JGI for damages arising out of their contracts with privity Defendants is Plaintiffs' allegation that JGI

---

[10] The underlying loan agreements gave the choice of forum to "the sole discretion of the Lender," which Plaintiffs argue refers to Thode now that she has been assigned all of the interest that Income Property USA (the original Lender) had in the loan contract. (R. 40-2, Page ID# 2269.) Plaintiffs argue that this allows Thode to select the Eastern District of Michigan to litigate her claim against Income Property USA, LLC. However, her claims against Income Property USA, LLC, arise out of her assignment contract with Income Property USA, LLC, not out of the underlying loan agreement.

is an affiliate of the other Defendants and a member of their conspiracy, making it potentially liable for all damages resulting from the enterprise's RICO violations. *See Fleischhauer*, 879 F.2d at 1301. Plaintiffs cannot avoid the arbitration and forum-selection clauses that bar their other claims merely by bringing suit instead against a RICO enterprise affiliate with which no plaintiff was in privity. *See Adams*, 702 F.3d at 440. Thus, this argument fails as well, and we affirm the district court's dismissal without prejudice of Plaintiffs' claims against JGI.

In sum, we affirm the district court's dismissal of all of Plaintiffs' claims against all Defendants, except Eva Thode's claims against Income Property USA arising out of their assignment contracts, which we reverse and remand for further proceedings consistent with this opinion.

## II.     Denial of Plaintiffs' Motion to File a Third Amended Complaint

### Standard of Review

This Court "review[s] the denial of a motion to amend under the abuse-of-discretion standard, 'unless the motion was denied because the amended pleading would not withstand a motion to dismiss, in which case the standard of review is de novo.'" *Beydoun v. Sessions*, 871 F.3d 459, 464 (6th Cir. 2017) (quoting *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010)).

### Analysis

Plaintiffs argue that the district court should have allowed them to amend their complaint, arguing that their proposed third amended complaint would have "alleviate[d] the district court's concerns about 'shotgun pleadings' and the failure to identify which Defendant allegedly did what." (Appellants' Br. 53.) As discussed, we affirm the district court due to the forum-selection and arbitration clauses, not on the grounds that Plaintiffs failed to state a claim on which relief can be granted. Because Plaintiffs' proposed third amended complaint would not change any of the

analysis with respect to the enforceability of the forum-selection or arbitration clauses, we affirm the district court's denial of Plaintiffs' motion to amend their complaint.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the district court judgment to the extent it denied Plaintiffs' motion to file a third amended complaint. We also **AFFIRM** the dismissal without prejudice of all of Plaintiffs' claims, with the exception of Plaintiff Eva Thode's claims arising out of her assignment contracts with Defendant Income Property USA. With respect to these latter claims, we **REVERSE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.