In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-2501

IAC/INTERACTIVECORP, *et al.*,

*Plaintiffs-Appellants*,

*v.*

ADAM ROSTON,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-3440 — **Sharon Johnson Coleman**, *Judge*.

ARGUED JANUARY 11, 2022 — DECIDED AUGUST 11, 2022

Before EASTERBROOK, SCUDDER, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. After IAC Publishing signed an Employment Agreement with Adam Roston making him its CEO, the relationship soured. Roston sparred with his employer about the value of his stock appreciation rights. He soon moved to become CEO of Bluecrew, another affiliate of IAC Publishing's parent company, IAC/InterActiveCorp, but the employment relationship continued to deteriorate until Roston was terminated. His former employers later

discovered that Roston had retained a company laptop, documents, and confidential data. IAC/InterActiveCorp, IAC Publishing, and Bluecrew (collectively "the Companies") brought a complaint in federal court in Illinois, seeking declaratory, monetary, and injunctive relief. First, IAC/InterActiveCorp and IAC Publishing sought relief declaring Roston was not entitled to more payments based on the stock appreciation rights Roston received from the plaintiffs. Second, IAC/InterActiveCorp and Bluecrew sought relief declaring that Roston was not wrongfully terminated. And third, all three plaintiffs brought claims under state and federal law that Roston had violated his contractual obligations by failing to return a laptop, company documents, and confidential data after his termination.

But in the very same contract under which the Companies sought relief lurks a mandatory forum selection clause, designating certain California courts as the exclusive venues for litigation. The district court was right to apply the forum non conveniens doctrine as it did and did not abuse its discretion in dismissing the complaint on that ground. We affirm.

I

A

The fraught employment relationship at the heart of this case began in 2011, when Roston joined IAC/InterActiveCorp ("IAC"), a Delaware corporation headquartered in New York. Five years later Roston became the CEO of IAC Publishing, a subsidiary of IAC in Oakland, California. Pursuant to that new position and IAC's 2016 Incentive Plan, Roston was awarded three and a half million stock appreciation rights ("SARs"), a form of equity-based compensation. Roston had

a right to exercise his vested SARs at their specified price and benefit from any positive difference between the fair market value ("FMV") of the common stock—determined by IAC Publishing's Board of Managers—and the specified exercise price. He received four FMV determinations during his tenure at IAC Publishing and challenged all four. In that same period, Roston also became a board member of IAC's subsidiary Bluecrew, an online staffing company incorporated in Delaware and headquartered in Chicago, Illinois.

One year after he became CEO of IAC Publishing, Roston signed an Employment Agreement ("Agreement"), effective July 1, 2016. Roston agreed to various obligations in handling confidential information, including trade secrets, data, information, and computer records. The Agreement also has multiple paragraphs dealing with termination, such as what qualifies as "for cause" and what SARs Roston would have a right to exercise after he left the company. And although the Agreement was originally between Roston and IAC Publishing, the latter could "allow any of its obligations to be fulfilled by, or take actions through, any affiliate of the Company … and in the event of any such assignment … all references to the 'Company' shall refer to Company's assignee or successor hereunder." Each of those provisions matters, but at this case's core is the precise interpretation and application of various phrases within this paragraph:

> This Agreement and the legal relations thus created between the parties hereto (including, without limitation, any dispute arising out of or related to this Agreement) shall be governed by and construed under and in accordance with the internal laws of the State of California

without reference to its principles of conflicts of laws. Any such dispute will be heard and determined before an appropriate federal court located in the State of California in Alameda County, or, if not maintainable therein, then in an appropriate California state court located in Alameda County, and each party hereto submits itself and its property to the non-exclusive jurisdiction of the foregoing courts with respect to such disputes.

IAC Publishing was later restructured, and Roston became CEO of Bluecrew in February 2019. Bluecrew equipped Roston with a MacBook Pro, on which Roston kept Bluecrew documents. Roston also had documents and data from his time at IAC and IAC Publishing, accumulated since 2011. These were stored in a personal Dropbox folder. The new position lasted barely over a year before Roston was informed of his termination and presented with a draft separation letter from IAC's general counsel. After his termination, Roston retained the MacBook and Dropbox documents and provided them to his attorneys. The plaintiffs learned of this in 2021 and made repeated demands that Roston return the items.

B

After Roston's termination but before discovery of his retention of the laptop and documents, IAC and IAC Publishing filed a one-count complaint in federal court in the Northern District of Illinois on June 12, 2020. The two plaintiff companies sought declaratory relief relating to any dispute over the valuation of Roston's SARs. Meanwhile, Roston sued in Alameda County Superior Court in California concerning the same and adding claims of wrongful termination.

Learning of the laptop, documents, and data and made aware of a possible wrongful termination claim, the plaintiffs amended their complaint in the district court in Illinois. The operative complaint added eight new counts—for a total of nine—and added Bluecrew as a third plaintiff. Roston moved to dismiss the complaint based on the forum non conveniens doctrine, alleging the proper venue to be in California. The district court agreed, finding that the Agreement's forum selection clause was mandatory and applied to Bluecrew and the complaint's claims. The district court thus considered only the public interest factors in its forum non conveniens analysis. Having concluded that the balance of factors favored California and that Illinois was not the proper forum, the district court dismissed the Companies' complaint.

## II

The Companies appeal the dismissal by challenging the district court's premises about the application of the forum selection clause. The clause, the Companies first argue, does not apply at all because the Agreement itself is no longer in force, and, even if it were, the complaint's claims are outside the forum selection clause's scope. And the clause is a permissive, not mandatory, forum selection clause. Following from that, the Companies conclude that the district court misapplied the forum non conveniens analysis by ignoring their preferred forum and the private interest factors and by misbalancing the public interest factors.

## A

Before we review the district court's forum non conveniens analysis, we address the threshold arguments about whether the forum selection clause applies to the claims in the

complaint and whether the clause is mandatory or permissive. We review questions of contract interpretation de novo, *Soarus LLC v. Bolson Materials Int'l Corp.*, 905 F.3d 1009, 1011 (7th Cir. 2018), including the enforceability of forum selection clauses, *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014). We apply federal law—not California law—as the substantive law governing the validity of this forum selection clause because both parties briefed this case on the assumption we would. See *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 438 (7th Cir. 2012) ("[N]either side has asked either the district judge or us to apply Mexican law to the clause; their debate over its enforceability is framed entirely as a dispute about American law, and so the issue of the applicable law has been waived.").

1

The Companies first argue that the forum selection clause simply does not apply to Roston's employment at Bluecrew. In other words, the Agreement—and its forum selection clause—expired. But this runs into a basic problem: Their complaint invokes the Agreement and seeks relief under it.

We hold that when plaintiffs pursue claims and relief that arise out of or relate to a contract, they will be bound by that contract's forum selection clause governing disputes that arise out of or relate to the contract. Because all the Companies' claims are within the scope of the forum selection clause, we do not need to wade into the war of inferences waged by the parties about whether the Agreement was still in force. The three plaintiffs will be bound by the clause because they have sued under the clause's contract.

This approach follows other legal approaches and reason. The Supreme Court "presume[s] as a matter of contract interpretation that … parties d[o] not intend a pivotal dispute resolution provision [such as an arbitration clause] to terminate for all purposes upon the expiration of [an] agreement." *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 208 (1991). Considering that arbitration clauses "are a species of forum selection clause," *Auto. Mechanics Loc. 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007), we have no problem applying *Litton*'s arbitration principles to forum selection more generally. See *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 10 F.4th 1016, 1029 n.2 (10th Cir. 2021) (doing just that); see also *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994) (borrowing a principle about the scope of arbitration clauses and applying it in the forum selection context). A forum selection clause in a putatively expired contract should still be enforced if the plaintiff brings claims within the clause's scope. See, e.g., *U.S. Smoke & Fire Curtain, LLC v. Bradley Lomas Electrolok, Ltd.*, 612 F. App'x 671, 672–73 (4th Cir. 2015) (finding expired contract's forum selection clause to apply to claims within its scope). Reason demands that a plaintiff cannot disavow a forum selection clause as expired and then in the same complaint-breath make claims under the contract containing the clause.

And so here. If the Companies were treating the Agreement as legally viable and binding as it concerned their claims, it makes no sense to allow them to declare the forum selection clause in the very same Agreement dead. Still, only disputes "arising out of or related to this Agreement" are subject to the forum selection clause. We must therefore

determine whether the complaint's claims fall within the ambit of the forum selection clause.

The wording "arising out of or related to this Agreement" is quite broad. See *Abbott Lab'ys v. Takeda Pharm. Co.*, 476 F.3d 421, 422, 424 (7th Cir. 2007) (forum selection clause applying "in the event of a dispute … arising from, concerning or in any way related to this Agreement" was "about as broadly worded as could be imagined"). Broad forum selection clauses like this apply to the litigation of disputes concerning the contract, not just the litigation of claims arising out of the contract. See *id.* at 424; *Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004). And when resolving disputes arguably depends on the construction of an agreement, those disputes "arise out of" that agreement. *Omron*, 28 F.3d at 603. Still, we do not construe such language so broadly as to encompass all disputes that would not have arisen but for the existence of an agreement. *Id.* at 602. A march through the complaint will show that every claim—about the SARs, wrongful termination, laptop, documents, and confidential data—is covered by the Agreement's forum selection clause.

Count One, brought by IAC and IAC Publishing, demanded a declaration that Roston was not entitled to more payments from the two companies based on alleged undervaluation of the FMV of IAC Publishing's stock, resulting in lowered SARs awards for Roston. On appeal, the Companies argue that disputes about SARs do not arise under the Agreement, because the SARs were awarded to Roston under a separate 2016 Incentive Plan contract before the Agreement was executed. It may be true that the SARs obligations were originally created by the Incentive Plan. But the life of Roston's

SARs did not end with the Incentive Plan. The Agreement has multiple provisions discussing how the parties would deal with Roston's SARs upon termination or other separation in the contract's Standard Terms and Conditions. So disputes over Roston's SARs relate to the Agreement regardless of the SARs' birthplace.

Count Two, also a declaratory judgment count, was brought by IAC and Bluecrew to pronounce both not liable for any claim related to Roston's termination. The question for this count is whether a wrongful termination claim by Roston would arise out of the Agreement. To decide wrongful termination on the merits, a court would need to first determine whether the contract extended to Roston's employment at Bluecrew. That is a question that can be answered only by interpreting the Agreement itself. The Companies' own appellate arguments bear this out. To define the nature of Roston's employment, they tell us to enforce the plain meaning of the Agreement. The Companies' lead argument in their brief is that the Agreement on its face states it did not extend to Roston's employment at Bluecrew. We do not, the Companies insist, need to consider anything past the plain language of the Agreement in deciding whether it applied to Roston's employment at Bluecrew. And the parties spar about the assignment clause's potential extension to Bluecrew, another question of contract interpretation. Last, the Agreement contains a paragraph on termination for cause in Section 1 of the Standard Terms and Conditions. Whether Roston gave his employer cause to terminate under this section is, again, a question of contract interpretation. So to adjudicate a wrongful termination suit by Roston against Bluecrew and IAC, a court would need to (1) interpret the Agreement to determine whether it applied to the Bluecrew-Roston relationship and

(2) interpret the Agreement to determine whether Roston was wrongfully terminated under the contract. Since both contract interpretation questions are sine qua nons of a wrongful termination merits determination, this dispute arises under the Agreement. See *Omron*, 28 F.3d at 603.

The latter seven counts of the complaint—claims for breach of contract, conversion, violations of the federal Computer Fraud and Abuse Act and Defend Trade Secrets Act, violation of the Illinois Trade Secrets Act, replevin, and detinue—were based on Roston's allegedly wrongful retention of the laptop, documents, and data, which all three plaintiffs contended violated the Agreement. As the complaint also points out, the Agreement explicitly discusses Roston's obligations about confidential information, which include the laptop, documents, and data. The complaint is littered with language illustrating that these counts relate to the Agreement: Count Three, Breach of Contract ("By their express terms, Roston's obligations were continuing in nature, and survived both the expiration of the agreements and the termination of his employment"); Count Six, Violation of the Federal Defend Trade Secrets Act and Count Seven, Misappropriation under the Illinois Trade Secrets Act ("As a condition of his employment, Roston agreed to and acknowledged a number of written terms and policies that include[d] several restrictive covenants concerning Plaintiffs' trade secrets and confidential information"); Count Eight, Replevin ("Roston took the laptop computer, documents, and data in violation of his contractual obligations to Plaintiffs"); and Count Nine, Detinue (Roston "took the laptop computer—as well as Plaintiffs' documents and data contained on the laptop computer and in a Dropbox folder to which Roston had access—instead of returning them, as he was required to do, in violation of his contractual

obligations to Plaintiffs"). And the relief requested was orders "requiring Roston to return the Bluecrew-issued laptop and all other proprietary and confidential company materials, as required by his employment contract" and "requiring Roston to disclose his credentials for the Dropbox folder containing Plaintiffs' confidential documents and data, pursuant to … his employment agreement."

The complaint cannot be clearer: "Roston's failure to return the laptop and the company documents and data in the Dropbox violated … his contractual obligations." Obviously, the complaint's disputes about these items arise out of the very contract allegedly violated by Roston. That the claims are tort or statutory in nature does not matter, because they are about Roston's alleged violations of his contractual obligations under the Agreement. See *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 445 (5th Cir. 2008) ("Though their causes of action sound in tort, the Ginters are complaining about the failure of Belcher to fulfill his contractual obligations.").

## 2

Bluecrew, too, is bound alongside the other two companies by the Agreement's forum selection clause, regardless of whether it is a signatory or party to the Agreement. It joins the other plaintiffs in seeking relief under the Agreement, and all claims in the complaint brought by Bluecrew are covered by the scope of the Agreement's forum selection clause. It is seeking to benefit from the Agreement. We join the Third Circuit in making the noncontroversial conclusion that a nonsignatory (as well as a signatory) plaintiff pursuing a claim within the scope of a contract's forum selection clause will be bound by that clause. See *In re McGraw-Hill Glob. Educ. Holdings LLC*,

909 F.3d 48, 70 (3d Cir. 2018) ("[A]n eyes-wide-open plain-
tiff—one who gets the benefit of the parties' bargain and has
the corresponding right to sue—would be bound by the terms
of the forum selection clause just as the signatories would
be."). And, again, our approach in the arbitration context al-
ready deals with this the same way. See *A.D. v. Credit One
Bank, N.A.*, 885 F.3d 1054, 1064 (7th Cir. 2018) (a nonsignatory
plaintiff is bound by arbitration clause when the plaintiff's
case centers on its asserted rights under the contract contain-
ing the arbitration clause); see also *Hellenic Inv. Fund, Inc. v.
Det Norske Veritas*, 464 F.3d 514, 518–20 (5th Cir. 2006) (analo-
gizing to arbitration estoppel principles to bind a nonsigna-
tory to a forum selection clause).

3

Whether the forum selection clause is mandatory or per-
missive shapes our review of the district court's forum non
conveniens analysis, so we turn there next. "[J]urisdiction,
venue, and forum clauses can be mandatory (exclusive) or
permissive (nonexclusive)." *Kochert v. Adagen Med. Int'l, Inc.*,
491 F.3d 674, 679 n.2 (7th Cir. 2007). Our federal contract "law
is clear: where venue is specified with mandatory or obliga-
tory language, the clause will be enforced; where only juris-
diction is specified, the clause will generally not be enforced
unless there is some further language indicating the parties'
intent to make venue exclusive." *Paper Exp., Ltd. v. Pfankuch
Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) (citing
*Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir.
1989)). The central inquiry, then, is whether a clause is merely
a party's consent to a court's jurisdiction—constituting a per-
missive forum selection clause—or whether the clause has
mandatory language specifying that disputes under the

contract "shall" or "will" be litigated in a specific venue or forum. See, e.g., *id.* at 755 ("In all disputes arising out of the contractual relationship, the action shall be filed in the court which has jurisdiction for the principal place of business of the supplier" was mandatory language); *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) ("Jurisdiction and venue over any disputes arising out of this agreement shall be proper only in the federal or state courts in Dallas County, Texas" was mandatory language).

The Agreement's forum selection clause is mandatory. It requires that any dispute arising out of or related to the Agreement "will be heard and determined before an appropriate federal court located in the State of California in Alameda County, or, if not maintainable therein, then in an appropriate California state court located in Alameda County." That's the exact type of forum selection clause we have found to be mandatory. The venue and forum are specified (both federal and state courts in a specific California county) with mandatory language ("will be heard"). See Bryan A. Garner, The Redbook: A Manual on Legal Style 562 § 27.3(b) (4th ed. 2018) (mandatory contractual duties generally "are well expressed with *will*").

Unable to assault the plain language of the clause choosing courts in California as the exclusive forum, the Companies try to muddle the mandatory nature of the forum selection clause via the Agreement's consent to jurisdiction clause, which reads: "[E]ach party hereto submits itself and its property to the non-exclusive jurisdiction of the foregoing courts with respect to such disputes." The courts are federal or state courts in California's Alameda County. The Companies' syllogism is simple: The plain language of "non-exclusive

jurisdiction" means this is a consent to jurisdiction clause; consent to jurisdiction clauses amount to permissive forum selection clauses; therefore the Agreement has a permissive forum selection clause.

But this glosses over that mandatory venue language can make forum selection mandatory regardless of additional permissive jurisdiction language. The Ninth Circuit explained this while applying federal law to a contract stating both that each party "consents to the jurisdiction of the courts of the State of Virginia[]" and that "[v]enue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia." *Docksider*, 875 F.2d at 763. Rejecting an argument that the whole provision was merely a consent to the jurisdiction of any court in Virginia, the Ninth Circuit held:

> Docksider not only consented to the jurisdiction of the state courts of Virginia, but further agreed by mandatory language that the venue for all actions arising out of the license agreement would be Gloucester County, Virginia. This mandatory language makes clear that venue, the place of suit, lies exclusively in the designated county. Thus, whether or not several states might otherwise have jurisdiction over actions stemming from the agreement, all actions must be filed and prosecuted in Virginia.

*Id.* at 764. *Docksider*'s reasoning is sound, which is why we've cited that case favorably, see *Paper Exp.*, 972 F.2d at 757, and adhered to the same approach. In *Muzumdar*, we determined that agreed-upon language submitting distributors to the "non-exclusive jurisdiction of any arbitration panel convened, or a court of competent jurisdiction in Dallas, Dallas County,

Texas" did not defeat the distribution contract's mandatory language establishing venue in federal or state courts in the same county. 438 F.3d at 761. Using *Docksider*'s reasoning, we refused to "find that a provision which requires appellants to submit to the 'non-exclusive' jurisdiction of Texas courts somehow undermines a very strongly worded forum selection clause containing mandatory language." *Id.* at 762. In our circuit the principle is clear: If a contract has both mandatory venue and forum language and permissive jurisdiction language, the separate permissive consent to jurisdiction clause does not defeat the mandatory forum selection clause.

That's precisely what's going on in the Agreement. The contract has a choice of law clause ("shall be governed by and construed under and in accordance with the internal laws of the State of California"), a choice of venue and forum clause ("will be heard and determined before an appropriate federal court located in the State of California in Alameda County, or, if not maintainable therein, then in an appropriate California state court located in Alameda County"), and a consent to jurisdiction clause ("each party hereto submits itself and its property to the non-exclusive jurisdiction of the foregoing courts"). Each clause has its own requirements independent of the other clauses. The clause choosing California courts has mandatory venue language, making the forum selection mandatory. The clause about jurisdiction, while permissive, is separate. The Agreement means that many courts (perhaps all American courts) may have proper personal jurisdiction over the parties, but only a few of those (California state and federal courts in Alameda County) are the proper venue for disputes.

B

Satisfied that a mandatory forum selection clause governs all the complaint's claims, we easily conclude that the district court did not err in dismissing the case under the forum non conveniens doctrine, "the appropriate way to enforce a forum-selection clause pointing to a state," *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). We review a district court's forum non conveniens dismissal for abuse of discretion—failing to consider the relevant public and private interest factors or unreasonable balancing of them. *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 802 (7th Cir. 1997). Errors of law or fact may also warrant reversal. *Abad v. Bayer Corp.*, 563 F.3d 663, 665 (7th Cir. 2009). The complaint's factual allegations we take as true. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 804 (7th Cir. 2016).

When applying forum non conveniens, district courts must engage in a two-step inquiry, determining (1) whether there is an available adequate alternative forum and (2) whether adjudication in that forum best serves the convenience of the parties and the interests of justice. *Stroitelstvo Bulgaria Ltd. v. Bulgarian–Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009). Usually, this second step includes considering a plaintiff's preference in forum as well as both private and public interest factors. But because the Agreement's forum selection clause is mandatory, the Supreme Court has narrowed our review. The Companies' preferred forum gets no weight, and the district court only needed to evaluate the public interest factors. See *Atl. Marine*, 571 U.S. at 63–64. The public interest factors still include the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the

trial of a diversity case in a forum at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008).

Our review, narrowed by *Atlantic Marine*, finds no abuse of discretion. No one questions that California is an adequate and available alternative forum (indeed, the Companies have filed a cross-complaint against Roston in the California Superior Court parallel litigation, *Roston v. Ask Media Grp., LLC et al.*, No. RG20064980 (Cal. Super. Ct. Alameda Cty., filed June 17, 2020)). Rather, the Companies' arguments are that the district court failed to give weight to their chosen forum, ignored the private interest factors, and misapplied the public interest factors. Given the clause's mandatory nature, *Atlantic Marine* dooms the first two arguments, premised as both are on the forum selection clause's being permissive. The district court had no duty to consider the plaintiffs' preferred forum or the private interest factors.

And the district court balanced the relevant public interest factors reasonably. It noted little local Illinois interest because of the laptop and data's connection to the plaintiffs in both New York and California. California law governs disputes under the Agreement, and Delaware law likely governs the valuation dispute, so Illinois citizens would be burdened in having to learn that relevant law. California is a more natural home for the governing law. And while administrative concerns might be a wash between the two forums, the district court concluded that the weight of the factors favored dismissal.

III

This conclusion sits well with our more general approach to forum selection, which disfavors gamesmanship and encourages litigation efficiency. We have warned against allowing plaintiffs to defeat forum selection clauses by choosing certain provisions to sue under or legal theories to press. See *Am. Patriot*, 364 F.3d at 888. Allowing any of the plaintiffs here to skirt the Agreement's forum requirements by arguing the Agreement has terminated—all the while making claims related to the Agreement—would undermine the design of broadly worded forum selection clauses. Using less-demanding tests in the forum selection clause context promotes efficiency and deters evasion. See, e.g., *Adams*, 702 F.3d at 441 ("Were it not for judicial willingness in appropriate circumstances to enforce forum selection clauses against affiliates of signatories, such clauses often could easily be evaded. For example, a signatory of a contract containing such a clause might shift the business to which the contract pertained to a corporate affiliate—perhaps one created for the very purpose of providing a new home for the business—thereby nullifying the clause.").

We leave open questions about the merits of this case, such as whether Bluecrew assumed the rights and obligations of the Agreement under California law. It may well be that a district court in California, upon consideration of these issues, will dismiss the case or dispose of it in some other way. But at this point, in this court, we hold that these plaintiffs cannot simultaneously pursue claims arising under the Agreement and disavow the Agreement's mandatory forum selection clause sending such disputes to California.

AFFIRMED