In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 22-1583

NULOGY CORPORATION,

*Plaintiff-Appellant,*

*v.*

MENASHA PACKAGING COMPANY, LLC, et al.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-01164 — **Mary M. Rowland**, *Judge.*

———————

ARGUED JANUARY 18, 2023 — DECIDED AUGUST 7, 2023

———————

Before HAMILTON, JACKSON-AKIWUMI, and LEE, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. This legal entanglement began in Ontario, Canada, where Nulogy Corporation sued Menasha Packaging Company, LLC, and Deloitte Consulting LLP, alleging the two collaborated to misuse Nulogy's proprietary information and Menasha breached its contract with

Nulogy.[1] After Deloitte challenged the Canadian court's juris-
diction, but before the Canadian court was able to rule, Nu-
logy voluntarily dismissed its Canadian trade secrets claims
against both defendants and refiled in the United States under
federal and state law. Menasha moved to dismiss those new
claims against it, arguing Canada was the proper forum. We
agree: Because Nulogy agreed by contract to litigate claims
against Menasha in Canada—claims, like those here, arising
from the companies' contractual relationship—we affirm the
district court's dismissal of Nulogy's claims against Menasha.
But because Deloitte has no similar contractual agreement
with Nulogy pointing to Canada as the proper forum, and it
continues to insist that Canadian courts do not have jurisdic-
tion over Nulogy's claims against it, we reverse the district
court's ancillary decision to dismiss Deloitte from the case.

## I

Menasha licensed one of Nulogy's software products, Nu-
logy Solution, to assist with its supply chain management.
Years later, Deloitte reviewed Menasha's systems in hopes of
better integrating Nulogy Solution into Menasha's ecosystem
of other business management software. To further that re-
view, Deloitte and Menasha asked Nulogy to share proprie-
tary information to which Menasha did not have access. Nu-
logy alleges that the two used this information to reverse en-
gineer an alternative to Nulogy Solution.

In July 2020, Nulogy filed suit in Ontario's Superior Court
of Justice, alleging breach of contract by Menasha and

---

[1] Nulogy also sued the parent companies, Menasha Corporation and
Deloitte LLP. For simplicity, we refer to the parents and subsidiaries
jointly as Menasha and Deloitte.

violations of trade secrets by Menasha and Deloitte. Deloitte insisted that it was not subject to jurisdiction in Canada; rather the United States offered the proper forum. Nulogy responded by voluntarily dismissing its trade secrets claims against Deloitte and Menasha and refiling those claims in the United States District Court for the Northern District of Illinois under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836(b), and the Illinois Trade Secrets Act, 765 ILCS § 1065/1, *et seq.* The breach of contract claims against Menasha remained pending in Canadian court.

Menasha moved to dismiss the United States trade secrets litigation, in part, on the grounds of *forum non conveniens*. Menasha pointed out that its contract with Nulogy contained a forum selection clause. That clause provides, "The Parties will initiate any lawsuits in connection with the Agreement in Toronto, Ontario, Canada, and irrevocably attorn to the exclusive personal jurisdiction and venue of the courts sitting therein." Deloitte did not join this motion. Instead, it filed its own motion to dismiss arguing that Nulogy had failed to state a claim upon which relief could be granted and seeking dismissal with prejudice.

The district court sided with Menasha, holding that Nulogy agreed to litigate claims against Menasha in Canada and it should be held to that agreement. In dismissing the claims against Menasha based on the doctrine of *forum non conveniens*, the district court reasoned that the doctrine required dismissal without prejudice of the entire complaint, including the claims against Deloitte. Consequently, the court denied Deloitte's motion as moot.

Nulogy appeals, arguing *forum non conveniens* requires that the claims against Menasha and Deloitte remain here in

the United States. In any event, Nulogy continues, the claims against Deloitte must remain considering its insistence that Canadian courts lack jurisdiction.

## II

At the outset we recognize that this case offered the district court three unsatisfactory options: First, it could reject Menasha's arguments, overriding a freely agreed upon contractual preference for litigating in Canada. Second, it could honor that preference and dismiss the claims against Deloitte along the way, allowing a third party to benefit from a contractual agreement it never bargained for. Third, it could dismiss the claims against Menasha while retaining those against Deloitte, potentially allowing for piecemeal litigation. The district court, for understandable reasons, opted for the second choice. We, however, find the last option more palatable. While the idea of closely related claims being litigated simultaneously in the United States and Canada is not ideal, this option preserves Menasha and Nulogy's bargain in line with Supreme Court precedent while ensuring Deloitte does not benefit from a contract for which it never provided consideration.

The Supreme Court has instructed that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). But before turning to the district court's *forum non conveniens* analysis, we must determine whether the forum selection clause applies to the claims within Nulogy's complaint and whether the clause is mandatory or permissive. *IAC/InterActiveCorp v. Roston*, 44 F.4th 635,

640 (7th Cir. 2022). These are threshold questions that we review *de novo*. *Id.*

Nulogy argues the contract's choice of law provision, containing the forum selection clause, does not apply to its American-based trade secrets claims. It reminds us that the provision applies to claims bearing a "connection with the Agreement" and, from Nulogy's vantage point, this means the claim must be contract related. Fitting the bill, in Nulogy's estimation, would be claims "for breach of contract, enforcement of contract or other claims under the contract itself." Nulogy would have us believe its trade secrets claims are unrelated to its contract, which required Nulogy to deliver Nulogy Solution, not share protected information.

We do not read the contract's choice of law provision or Nulogy's complaint so narrowly. The complaint relies heavily on the existence of Nulogy's contractual relationship with Menasha. Nulogy alleged that "Menasha continued to engage in licensing with Nulogy, not only to obtain the use of the Nulogy Solution but also to continue access to and obtain through their misrepresentations the delivery of confidential trade secret information that would otherwise never have been provided." Nulogy suggests it never would have provided the confidential information central to its claims absent the contract, and any claims regarding the information's misuse therefore bear a strong connection to the agreement.

Satisfied that the forum selection clause applies, we turn next to whether it is mandatory or permissive. Our work here is straightforward. The clause provides that the parties "will" initiate lawsuits in Toronto and that they "irrevocably attorn to the exclusive personal jurisdiction and venue of courts sitting therein." This language could not be more mandatory.

"[W]here venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) (citation omitted); *see IAC/InteractiveCorp*, 44 F.4th at 643 (citing cases and providing examples).

Because the clause is mandatory, the *forum non conveniens* analysis is modified in three ways. First, Nulogy's choice of forum merits no weight. *Atl. Marine*, 571 U.S. at 63. Typically, a defendant that invokes *forum non conveniens* "bears a heavy burden in opposing the plaintiff's choice of forum" because the doctrine results in dismissal with the plaintiff unable to refile elsewhere if the statute of limitations has run. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 806 (7th Cir. 2016). But the analysis is inverted when plaintiffs file in a location that would violate a mandatory contractual obligation. *Atl. Marine*, 571 U.S. at 63. In this scenario, "as the party defying the [mandatory] forum selection clause, the *plaintiff* bears the burden of establishing that transfer to the forum for which the parties bargained is *unwarranted*." *Id.* (emphasis added). Second, we do not consider the parties' arguments regarding their private interests. *Id.* at 64. And third (less relevant here), we do not consider the original venue's choice-of-law rules, "a factor that in some circumstances may affect public-interest considerations." *Id.*

Using this modified approach, we now turn to whether the district court abused its discretion in considering Menasha's invocation of *forum non conveniens*. *See IAC/InterActiveCorp*, 44 F.4th at 640. The first step in the

analysis is to determine the availability and adequacy of the alternate forum. *Deb*, 832 F.3d at 807. Nulogy argues that the district court erred by skipping this step. But because forum selection clauses represent an agreement as to the proper forum, district courts are permitted to assume that the chosen forum is available to the contracting parties, *see Azima v. RAK Inv. Auth.*, 926 F.3d 870, 875 (D.C. Cir. 2019) (citing *Atl. Marine*, 571 U.S. at 63–64), and to assign no weight to the plaintiff's conflicting forum choice, *see Atl. Marine*, 571 U.S. at 63.

Nulogy would have us jettison this assumption because its complaint included claims against Deloitte, a party to the litigation that was not party to the Nulogy-Menasha contract and therefore had not agreed that Canada is the proper forum. In support, Nulogy cites to cases where we have said that "an alternative forum is available if *all parties* are amenable to process and are within the forum's jurisdiction." *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997) (emphasis added); *see also Deb*, 832 F.3d at 807; *Fischer v. Magyar Államvasutak Zrt.*, 777 F.3d 847, 867 (7th Cir. 2015); *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d 951, 957 (7th Cir. 2007). But in none of those cases did we have occasion to consider the question we now face: does the naming of a defendant not party to a contractual forum selection clause upset *Atlantic Marine*'s *forum non conveniens* analysis as to claims against a party that *is* subject to the clause? We hold that it should not. A contrary ruling would be in tension with our precedent that plaintiffs cannot defeat a forum selection clause by picking and choosing which "provisions to sue on, [] the legal theories to press, [or] defendants to name in the suit." *Am. Patriot Ins. Agency v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 888 (7th Cir. 2004). Nulogy cannot subvert its agreement

with Menasha to litigate claims between the two in Canada by naming Deloitte as a defendant.

Nulogy has a backup argument if we decide the forum selection clause applies: Menasha's claims are best litigated in the United States *despite* the forum selection clause. But the district court did not abuse its discretion in finding otherwise. Once an adequate forum is established, the typical *forum non conveniens* analysis then requires the moving party (here, Menasha) to show that the public and private interests weigh in favor of dismissal. *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008). Again, this changes when attempting to defy a mandatory forum selection clause, with the burden shifting to the plaintiff (here, Nulogy). Further, with a contractually agreed upon forum, "[a] court must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64. Therefore, the party attempting to defy a forum selection clause (here, Nulogy) must prove the public interest factors alone counsel against dismissal. *Id.* "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

Faced with this burden of defeating the preselected forum, Nulogy has one persuasive argument, which is that requiring its trade secrets claims against Menasha to be brought in Canada will result in piecemeal litigation. Indeed, Deloitte claims it is not amenable to suit in Canada; Nulogy has not repudiated Deloitte's position on this, and we see no reason not to accept it. So at this juncture we will assume that the claims against Deloitte should stay in the United States even if the claims against Menasha proceed in Canada. And we recognize that "concern[s] about the danger of piecemeal litigation

[are] well founded." *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989). But Nulogy's argument is a red herring because even if Menasha were forced to defend the trade secrets claims in the United States with Deloitte, litigation would still proceed on two tracks with Menasha having to litigate the pending contractual claims against it in Canada. We recognize that by dismissing the claims against Menasha in favor of litigating those claims in Canada we would require closely related trade secrets claims to proceed simultaneously in Canada (against Menasha) and the United States (against Deloitte). But "courts regularly permit parallel proceedings in an American court and a foreign court." *See Turner Ent. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1521 (11th Cir. 1994). In this case, any worry about piecemeal litigation should not override Menasha's and Nulogy's valid forum selection clause. *Atl. Marine*, 571 U.S. at 64 ("[F]orum-selection clauses should control except in unusual cases.").

Nulogy's other argument against dismissing its American trade secret claims against Menasha is that American courts have a strong interest in interpreting and enforcing American laws. According to Nulogy, Canadian courts, on the other hand, should not be left to adjudicate claims under United States federal and Illinois state trade secret laws, laws they have no familiarity with. But we see no reason why this would come to pass. Nulogy previously brought trade secret claims against Menasha in Canada under Canadian law that it voluntarily dismissed, and it does not attempt to explain why it cannot do so again.

Although we hold that the claims against Menasha should have been dismissed, that does not extend automatically to Deloitte. Just as Nulogy should not be allowed to circumvent

its freely agreed upon forum selection clause by naming Deloitte, Deloitte should not be allowed the unquestioned benefit of a forum selection clause for which it did not bargain. Nevertheless, the district court provided Deloitte that benefit based on *Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436 (7th Cir. 2012). There we concluded that one defendant could enforce a forum selection clause pointing to Mexico and hypothesized that *forum non conveniens* might necessitate the dismissal of claims against the second defendant even if it could not independently enforce the clause. *Id.* at 443. But this was dicta because the second defendant *could* enforce the forum selection clause, something Deloitte cannot do (and no one argues as much). Applying this dicta would ignore the nuance in the case before us. The threat of piecemeal litigation weighs in favor of dismissing the claims against Deloitte, but Deloitte's insistence that Canadian courts lack jurisdiction counsels against dismissing it from the case in the United States. The district court never engaged with these questions. Indeed, Deloitte did not cite *forum non conveniens* as a reason to dismiss the claims against it, and it should not prevail on an argument it has not raised. [2] The

---

[2] Deloitte does raise an argument that we should affirm dismissal because Nulogy failed to state a claim. *See* FED. R. CIV. P. 12(b)(6). If this was merely an alternate ground for affirmance, then we could hear its argument as part of Nulogy's appeal. *See Weitzenkamp v. Unum Life Ins. Co. of Am.*, 661 F.3d 323, 332 (7th Cir. 2011). Deloitte confirmed at oral argument, however, that it seeks dismissal with prejudice on the Rule 12(b)(6) ground. In seeking to alter the judgment to make it more favorable to it, Deloitte's argument is outside the scope of this appeal, and it needed to file a cross-appeal. *See generally*, *Mass. Mut. Life Ins. Co. v. Ludwig*, 426 U.S. 479, 480 (1976), quoting *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924) ("the appellee may not attack the decree with a view either to

claims against Deloitte should remain in the United States until and unless it can show a more convenient forum exists.

### III

The claims against Menasha that arise out of its contractual relationship with Nulogy should be litigated in Canada as the two companies agreed. The dispute between Nulogy and Deloitte, however, should remain in the United States, the only forum Deloitte insists it is amenable to suit in. We therefore AFFIRM the dismissal of Nulogy's claims against Menasha and REVERSE the dismissal of its claims against Deloitte.

---

enlarging his own rights thereunder or of lessening the rights of his adversary" without taking a cross-appeal).